Stanley I. Greenberg (SBN 053649)
A Law Corporation
11845 West Olympic Boulevard, Suite 1000
Los Angeles, CA 90064
Telephone: (424) 248-6600
Facsimile: (424) 248-6601
Email: stanmanlaw@aol.com

Eugene P. Hanrahan (SBN 185826)
Sitkoff & Hanrahan
11845 West Olympic Boulevard, Suite 1000
Los Angeles, CA 90064
Telephone: (310) 213-8055
Facsimile: (310) 312-8227
Email: ghanrahan@formerdistrictattorneys.com

Attorneys for Defendant:
TIMOTHY PATTERSON

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>　　vs.<br><br>TIMOTHY CORNELL PATTERSON,<br><br>　　　Defendant. | Case No.  2:21-CR-00443-PA<br><br>**DEFENDANT TIMOTHY PATTERSON'S SENTENCING POSITION; EXHIBITS**<br><br>DATE: April 25, 2022<br>TIME: 8:30 A.M. |

Defendant Timothy Patterson,[1] by and through his counsel, Eugene Hanrahan and Stanley Greenberg, files this sentencing position.  This motion is based upon the attached memorandum of points and authorities, the files and records of this case, the United States Probation Office's Presentence Investigation Report and Letter, and such further evidence and argument as the Court may permit.

Dated: March 31, 2022                    Respectfully Submitted,

                                         /s/ *Eugene Hanrahan*
                                         Eugene Hanrahan
                                         Counsel for the Defendant

                                         /s/ *Stanley Greenberg*
                                         Stanley Greenberg
                                         Counsel for the Defendant

---

[1] Timothy Patterson is referred to as "Tim" hereafter for conciseness and to avoid confusion with other family members with the same last name.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.  INTRODUCTION

This case has no victim impact statements because there are no victims. Neither does this case have any loss calculations.  No person or entity has suffered a loss.  Tim unlawfully possessed a firearm because of his status as a previously convicted felon.  This is not to minimize his crime.  Rather, we seek to explain why Tim would commit such an obvious crime and to demonstrate that he is an extremely positive influence on society rather than simply a law-breaking felon.

As he will discuss in his written allocution to the Court, Tim possessed the pistol to protect himself and his family.  The assaults and shootings of rappers are well-documented and reported.  (*See*, Exh. B, Articles: Murder Leading Cause of Death of Rappers.)  A recent study found that murder is the leading cause of death among black rappers like Tim.  *Id*., pp. 1-4.  This reality is underlined by a recent event on March 9, 2022 at Tim's residence where three armed men climbed over the side gate of Tim's residence while his fiancé was home alone with their children. Fortunately, Tim's dog scared the trespassers away.  (Exh. C, Police Report.)  Tim understands, of course, that this does not make his possession of a firearm legal.

The defense asks only that Tim's offense be placed in the context of his life as a whole.  By that we urge the Court to consider his reasons, the potential harm to society, and his prior history.  The reason is plain.  Absent an attack on him or his

family, he would never use the firearm; thus, there is no virtually no danger to society.   Also, a review of his prior criminal history shows that he is not a predator. There are no predatory crimes in his history.   All of his crimes have to do with possession of various substances and, in this case, a firearm.   Thus, the potential for danger to the community at large is minimal.

Tim was born in and raised in a community that commonly produces lawbreakers.   His father spent most of Tim's youth in prison.   His mother spent most of his youth in drug rehab and custody.   Fortunately, Tim had a well-educated and loving grandmother who was his primary caretaker in his youth; and she taught him well.

Tim is a shining of example of one who gives back to his community.   Due to his musical talents, he has means, and he is not shy about giving it back.   The documents (Exh. G), letters (Exh. D), photographs (Exhs. E, F, H) and videos (Exhs. I, J, and K (submitted under separate cover)) will demonstrate his charitable efforts directed especially towards his old neighborhood in Sacramento:   jobs, gifts, food, bicycles, free entertainment, programs, educational endeavors—you name it and he has likely done it.   He understands that doing good works does not permit him to do bad elsewhere.   But when all these factors are considered and weighed, we urge the court to impose a non-custodial sentence.   We suggest that the sentence should include conditions such as would allow him to continue—and even expand—his

charitable endeavors to the community.  A period of home confinement may be appropriate to focus his attention, correct his wrong, and allow him to continue to contribute to his community.

## II. THE DEFENSE SENTENCING RECOMMENDATION

The defense is confident, and the law presumes, that this court is extremely familiar with the Sentencing Guidelines and the relevant legal authority, so citations will be kept to a minimum.  The defense therefore requests that the court determine 1) the applicable guideline range [18. U.S.C. § 3553(a)(4)], 2) whether to apply any of the guidelines' departure policy statements to adjust the guideline range [18. U.S.C. § 3553(a)(5)], and 3) whether a variance is warranted considering the factors in § 3553(a) as a whole, including whether a variance is warranted [U.S.S.G. § 1B1.1(c)].  *Gall v. United States*, (2007) 552 U.S. 38.

### A.  Tim's Applicable Guideline Range

In the plea agreement, Tim admitted that on January 29, 2021 he knowingly possessed a nine-millimeter pistol loaded with 16 rounds of ammunition underneath the driver's seat of the car he was driving in Culver City.  [Dkt. 42, ¶ 11]  He had been previously convicted of four felonies in Sacramento County Superior Court: two unlawful possession of a firearm convictions, and two possession for sale of marijuana convictions.  *Id*.  His Guideline range in the Plea Agreement is calculated as follows:

| | | |
|---|---|---|
| **Base Offense Level** | 14 | § 2K2.1(a)(6)(A) |
| **Acceptance of Responsibility** | -2 | § 3E1.1 |
| **<u>Downward Variance</u>** | <u>-2</u> | 18 U.S.C. § 3553(a) |
| **Adjusted Offense Level** | 10 | |

The defense may argue that additional specific offense characteristics, adjustments, and departures are appropriate. Each side may argue for a sentence outside the sentencing range based on factors in 18 U.S.C. §§ 3553(a)(1), (2), (3), (6), and (7). There is no agreement between the parties as to Tim's criminal history category although Probation places Tim in Criminal History Category III with 4 Criminal History Points. [Dkts. 39, 47 ¶ 42] The resulting guideline range is 10-16 months in Zone C.[2]

## B.    The Defense Requests That the Court Depart Downward.

Tim's case is an "atypical" case that lies outside the "heartland" of conduct covered by the guidelines. USSG Ch.1, Pt.A (1)(4)(b). Although certain aspects of Tim's background are not "ordinarily relevant" for sentencing [§ 5H1.1-4], his background is so inspiring to an "exceptional degree" that it merits a downward departure. U.S.S.G. § 5K2.0(a)(4).

---

[2] The Pre-Sentence report acknowledges the two-level downward variance recommended by the prosecution [¶ 99], however the downward variance is not factored into the report's Guidelines' calculation [¶¶ 18-26]. The Pre-Sentence Report also lists an open traffic case from Sacramento. Tim has since paid the fine to close the case.

Tim was born into poverty, neglect, and drug addiction.  His mother was addicted to drugs, and his father was frequently incarcerated and cruel when he *was* home.  (Exh. D, Letter from sister Melissa Harrison, pp. 3-7.)  Tim overcame those disadvantages to become an enormously successful entertainer so that today, he eschews the excesses of celebrity, fame, and riches and lives quietly with his fiancé in Sherman Oaks with his two young daughters (Ariana, age 8 and Zayda, age 3) with another daughter expected in October.  (Exh. D, Letter from Sukhjit Singh, Tim's fiancé, pp. 1-2.)

In addition to supporting his family, Tim routinely and generously gives back to his community.  He created a nonprofit company named Provide For Your People.  He organizes field trips to Six Flags, gives away presents to families and children (Exh. E and J), and puts on free family events such as concerts and barbeques. (Exh. F, G pp. 9-10) Tim has donated hygiene packages, food, and money to homeless people in Los Angeles, Sacramento, and Las Vegas.  (Exhs. G, H, and K), and appears in person to distribute backpacks for children (Exh. I). Tim has also paid for the funerals for a fan who died of cancer and ten other funerals in Sacramento and Fresno.

Tim's generosity and civic-mindedness originated with his beloved grandmother, Brenda Usher, who rescued him from his mother's residence when he was two years old after she noticed a cigarette burn to his ear.  Afterwards, he

generally lived with his grandmother and otherwise visited with his mother on weekends. (Exh. D, pp. 3-7, Letter from sister Melissa Harrison.)

Tim attributes his life and success to his grandmother, Belinda Usher, who passed away recently. She was loving and generous but also strict and old-fashioned. She insisted that Tim read about the financial markets and perform household chores. She had earned her Master's Degree in social work and was employed as a social worker for delinquent children. She raised six of her own children, one of whom became Oakland's Deputy Fire Chief. (Exh. D, pp. 13-14, Letter from Emon Usher.) She owned her home and other real property. Tim's grandmother also fostered and promoted Tim's music interest by taking him to concerts. Tim's grandmother forced Tim to improve his vocabulary and refused to allow him to curse in his raps or poetry. As much as Tim loved his grandmother, he remained lonely during his childhood due to his separation from his parents, especially at holidays such as his birthdays or Christmas.

In Junior High School, Tim began to rap at age ten. He started to encounter gang members and bullies at school. His grandmother worked hard all day, so he had little supervision. He was mischievous but never went to juvenile hall or fought seriously.

By age sixteen, Tim rapped at parties and small clubs such as the Boys and Girls Club in downtown Sacramento. He and his grandmother dreamed of him

enjoying the same success as other performers whose concerts he attended such as Lil Bow-wow and Lil Romeo.  Tim was somewhat rebellious during his teen years and lived for several months with family members in Atlanta.  When he returned to Sacramento, he was even more devoted to his grandmother whose approval he sought eagerly.

By 2013, Tim started to experience pivotal success with his career.  He collaborated with Bay Area artists and placed music videos on YouTube that garnered 10,000 views that earned him $10,000.  Tim continued to write and perform so well that eventually in 2018 Kendrick Lamar recognized him during his Grammy award acceptance speech.  (Exh. G, p. 7.)  Shortly afterward, Tim's song "Sleep Walking" was featured in the blockbuster superhero movie Black Panther starring the late Chadwick Boseman.  (Exh. G, p. 6.)  Tim began to sell out larger and larger venues and toured with other famous artists.

Today, Tim performs at the pinnacle of the music and film industry.  He has performed at halftime at the Lakers vs. Clippers game.  (Exh. G, p. 4.)  His songs appear in successful feature films such as the Fast and Furious franchise.  (Exh. G,

p. 5.)  He and Eminem created a song for the Venom II movie soundtrack.  (Exh. G p. 8.)  The film grossed over $400 million.[3]

He has founded and owns three business entities: Mozzy Records, Pull Up Tour Company, and Provide for Your People.  Mozzy Records is Tim's production company that has produced Tim's five Top Ten hits.  (Exh. G, p. 2.)  The company employs between ten and fifteen employees and operates from a Los Angeles recording studio that Tim owns in Harbor City.  The company records and produces albums, creates videos, and takes photographs.  The studio also serves as an event space for various promotions.  Overall, it has produced over 100 projects with a gross income of about $30,000 per month.  Underneath the Mozzy Records banner are the concerts, albums, and musical verses.  The company is expanding rapidly with potential revenue of $10 million per year.  Also, Tim is about to sign a contract with a major music label which will raise the company to an even higher level of profitability and success.

Pull Up Tour Company, established in 2016, manages Tim's tours, concerts, and merchandise.  The company typically employees five people during a tour.

---

[3] https://deadline.com/2021/11/venom-let-there-be-carnage-crosses-400-million-global-box-office-1234867905/

Although the company has been less active during the COVID pandemic, a good tour will gross $300,000 per year.  Other major artists often join the tour as well as ten to fifteen disadvantaged young men from Tim's old neighborhood in Sacramento.  Tim inspires these men with the world and possibilities that exist outside the violent politics of their neighborhood.  Tim gives them jobs and underwrites their room and board while on tour.  Tim takes as many men as he reasonably can on tour because he understands the pettiness of neighborhood politics that can cloud one's vision to achieve success outside of it.

Tim's mental and emotional conditions are relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, were present to an unusual degree and distinguish the case from the typical cases covered by the guidelines.  U.S.S.G. § 5H1.3.  *See*, § U.S.S.G. 5H1.4.  His mental and emotional condition is the product of the same trauma that led to his participation in the charged crime.  Shortly before his current offense, his beloved grandmother died of cancer.  (Exhs. L and M, Untreated Trauma Videos.)

### C.  The Defense Requests That the Court Vary the Sentence Downward, as Urged by the Prosecution in the Plea agreement.

The letters written on Tim's behalf express, more eloquently than defense counsel could articulate, the grounds for a downward variance.  Tim's uncle, Emon Usher, Oakland's former Deputy Fire Chief, wrote that Tim –

11

… [l]ike his mother, he walks and lives with a servant's heart.  It is nothing for him to give a gift of gratitude to people in greater need than he.  And he has demonstrated this, even in anguished moments when a family is financially unable to provide a respectful celebration of life ceremony for a loved one.  In many ways, he is a budding pillar in the community, incessantly and humbly doing his part to make the communities that allow him to flourish a little better each day.

As a retired deputy fire chief and a current leadership coach, I know a leader when I see one in action.  I am not including words that do not apply to Tim's character to simply provide a varnished filter; this is who he is. We need more leaders like this perfectly imperfect man in our communities.  (Exh. D, pp. 13-14.)

There is no escaping the facts of the instant case in which Tim possessed a firearm after sustaining four felony convictions, nor can the defense disregard Tim's other arrests.  [PSR ¶¶ 28-41] These inescapable facts are, however, mitigated by Tim's personal history and characteristics set forth above in section II.B., 18 U.S.C. § 3553(a)(1), and excerpted in his sister's letter who writes --

When I turned 10, my mother was incarcerated, I was forced to move to San Francisco with my father.  I remember writing Timothy letters to keep in touch.  Even at my young age, I always wanted to uplift him because he was given the shortest end of the stick when it came to our parents.  I would send positive letters and a dollar to put a smile on his face.  I would call to check on him.  So much to that, to this day, I still remember that number.

…Timothy always makes it a point to greet his fans and give them a little time, no matter how many of them there is.  He is a very humble human being and it is apparent that he enjoys the career he has chosen and all that it comes with.  He also does a lot for his community.  I have personally helped him with backpack and Christmas giveaways.  He is constantly in the homeless communities handing out food or money or helping for funerals.  He takes care of the less fortunate and goes above and beyond for the children. (Exh. D, pgs. 4, 6)

The court's sentence can reflect the seriousness of this offense and provide a just punishment while still providing correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(2); *see*, *United States v. Whitehead*, (9th Cir. 2008) 532 F.3d 991, 993 (affirming downward variance in counterfeit access device case because in part the defendant's crime did not pose the same danger to the community as other crimes).  A brief time in home detention and/or electronic monitoring would reinforce the seriousness of this crime by depriving Tim of his liberty, yet still permit him to care for and support his children and business. In *Tapia v. United States* (2011) 564 U.S. 319, 332, the Supreme Court held that although sentencing courts may not impose or lengthen a prison term to promote an offender's rehabilitation, sentencing courts may vary downward to permit access to counseling or treatment programs.

## III.  CONCLUSION

Tim's offense does not bar him from a probationary sentence since his offense is a Class C felony with a maximum of ten years imprisonment.  18 U.S.C. § 3559(a)(3); [PSR ¶ 101]; § 5B1.1(b)(1).  Under the terms of the Plea Agreement, Tim's sentencing range is in Zone C from 10-16 months (Adjusted Offense Level 10, Criminal History Category III).  A sentence in Zone C generally precludes a probationary sentence [§ 5B1.1(a)(1)(2)], unless the court departs or varies downwards to bring the sentence into Zones A or B.  Probation has calculated the

cost of probation supervision and has concluded that Tim has the means to pay for it.  [PSR ¶¶ 94, 95, 107].

Here, the Pre-Sentence report strongly infers that Tim has previously abused marijuana.  [Dkt.  47, ¶¶ 72-76]   He received drug treatment in 2015 to gain full custody his eldest daughter.  *Id*. ¶ 75 When the Culver City Police Officers stopped him in the instant case, Tim possessed a personal use amount of marijuana in the car, and the smell of burnt marijuana came from the car. His marijuana usage ceased with his arrest in this case.   Also, Tim initial drug tests on bond were positive for marijuana until his abstinence resulted in clean drug tests thereafter. *Id*. ¶ 7.  Therefore, a sentence spent on home detention or receiving drug treatment followed by a term of supervised release, is both "sufficient" to serve the interests of sentencing and is "not greater than necessary."

After Tim was arrested for the instant offense, he knew that the District Attorney's Office had rejected the case, and that it had been referred to the United States Attorney's Office.  He did nothing to evade arrest or impede law enforcement.  Indeed, he continued to make his court appearances, and he was arrested unexpectedly at a court appearance in Las Vegas.  He posted bond in Las Vegas, and then made his required court appearances in Los Angeles.

Finally, Tim's performance while under the supervision of Pretrial Services gives the court a good idea of how he would perform on probation.  One of his

Pretrial Services Officers has allowed Tim to be kept under "minimal supervision" during this case while Tim has traveled extensively for work and complied with the terms of his release. If given a probationary sentence, Tim would continue to act similarly.  He would be calm and good-natured, take care of his family and his business, and the court would later refer to him a success story.


Date: March 31, 2022                    Respectfully Submitted,

                                        /s/ Eugene Hanrahan
                                        Eugene Hanrahan
                                        Counsel for the Defendant

                                        /s/ Stanley Greenberg
                                        Stanley Greenberg
                                        Counsel for the Defendant

**EXHIBIT INDEX**

Exhibit A:    Timothy Patterson Allocution Letter

Exhibit B:    Articles: Murder Leading Cause of Death of Rappers

Exhibit C:    Police Report

Exhibit D:    Character Letters

Exhibit E:    Photos re: Community Service

Exhibit F:    Photos re: BBQ Community Service

Exhibit G:    Highlights of Career and Community Service

Exhibit H:    Photos re: Skid Row Community Service

**SUBMITTED UNDER SEPARATE COVER**

Exhibit I:    Video: Mozzy Back Pack Drive for Kids

Exhibit J:    Video: Mozzy Documentary Clip 1

Exhibit K:    Video: Mozzy Documentary Clip 2

Exhibit L:    Video: Mozzy, Untreated Trauma, Episode 1

Exhibit M:   Video: Mozzy, Untreated Trauma, Episode 2